L. B. HARDISON v. D. C. COLEMAN, as Sheriff of Dade County.

164 So. 520.

En Banc.

Opinion Filed December 11, 1935.

*H. H. Wells, B. K. Roberts* and *William K. Whitfield,* all of Tallahassee, and *J. Fritz Gordon* of Miami, for Petitioner;

*G. A. Worley,* State Attorney, J. W. Watson, Jr., and *Abe Aronovitz,* for Respondent.

ELLIS, P. J.—L. B. Hardison in November, 1935, kept in his place of business a mechanical device or machine commonly called and known as a "slot machine."

A warrant for his arrest was issued by a Justice of the Peace upon an affidavit purporting to charge Hardison with

the crime of conducting a lottery for money. The language of the warrant issued, and upon which he was arrested, charges the alleged offense in the following words: "One L. B. Hardison did then and there unlawfully and feloniously set up and conduct a lottery for money." That language is followed by a description of the so-called lottery, which it is alleged consisted of a certain mechanical device into which persons were "solicited and permitted to insert in said mechanical device a certain coin or coins, namely: five cents (5c) pieces, commonly known and called 'nickels,' lawful money of the United States of America, in consideration of which said nickel and nickels so deposited" the person or persons so depositing the same "were allowed and permitted to pull a certain lever and handle on said mechanical device whereby certain wheels were set in motion with an understanding and agreement that if the said wheels when put in motion should stop in a certain order" that the person "so inserting coins in said machine and setting said wheels in motion by means of said handle and lever, would win a prize and prizes consisting of money, to-wit: five cent (5c) coins, commonly called 'nickels' in numbers and amounts dependent upon the position in which said wheels so set in motion should stop and also under the agreement and understanding that if said wheels did not stop in a certain order" then the "persons playing said machine and inserting coins therein should receive nothing."

Such is the description of the device or game which it is alleged constituted the lottery which Hardison was accused of setting up and maintaining in his place of business.

Hardison was arrested and brought before the Justice of the Peace for a preliminary hearing. His counsel moved to quash the warrant upon the grounds that the warrant charged no offense against any laws of the State of Florida

and that the machine was a duly licensed machine under the laws of the State of Florida. The committing magistrate committed the accused to jail in default of a bond in the penal sum of five hundred dollars required of him for his appearance at the next term of the Criminal Court of Record.

Hardison applied to this Court for a writ of habeas corpus and seeks his release from custody upon the ground that the warrant and the evidence adduced under it before the committing magistrate show the commission of no offense by him under the laws of the State.

The statute under which the petitioner was charged with setting up and conducting a lottery denounces the setting up, promotion or conducting of any lottery for moneys or for anything of value, or the disposing of any money or property by means of a lottery, or conducting lottery drawings for the distribution of prizes by lot or chance, or the advertising of a lottery scheme or device, or the selling of lottery tickets. The offense is made a felony under the statute. See Sec. 767 C. G. L., 1927.

It is apparent from the reading of the warrant that the machine which is referred to is an ordinary "slot machine" of the type used for petty gambling by persons who, entering a place where such a machine is established may desire to risk a coin of small denomination upon the chance of receiving nothing in return or a possible winning of several coins of the same denomination as that placed in the machine.

However plain or ornate the machine may be the description of the one mentioned in the warrant differs in no material respect from the machines of the type above described.

In the case of Kirk v. Morrison, 108 Fla. 144, 146 South.

Rep. 213, this Court, considering a case where a "slot ma-chine" was used for the purpose of vending packages of mints, and in the operation of the machine the person play-ing might receive not only the value of the coin deposited in mints but brass disks which might be used for again play-ing the machine, but not for additional mints nor for the purchase of other merchandise, said:

"There is no law in Florida prohibiting the operation of 'slot machines' merely because they are slot machines. Slot machines *per se* are not unlawful, but they may be unlaw-ful if designed to operate for the purpose of gaming or gambling. And slot machines may be so constructed as to constitute gambling devices *per se,* or they may become gambling devices by the manner in which they are actually used, although not intrinsically designed or constructed as gambling machines." (Italics supplied.)

In the case of McBride v. State, 39 Fla. 442, 22 South. Rep. 711, this Court, in defining the terms "gaming" or "gambling," in an opinion by Mr. Chief Justice TAYLOR, said:

"The wagering, betting, or laying of money or other thing of value upon the transpiring of any event whatso-ever, whether it be upon the result of a game of chance or upon a contest of skill, strength, speed, or endurance, *whereby one* party gains and the other loses something for nothing, whether the *parties betting* be the actors in the event upon which their wager is laid or not, is *gaming* or *gambling,* within the meaning of these acts. (Italics supplied.)

The Court had under consideration Sec. 1, Chapter 3764, Laws of Florida 1887, Section 2644, Rev. Stats. 1892, carried into the C. G. L. of 1927 as Section 7657 (Sec. 5499 R. G. S. of 1920, which denounces the offense of keep-

ing or maintaining a gaming table or apparatus, house or other place for the purpose of gaming or gambling.

That definition of the terms gaming or gambling was again approved by this Court in the case of Reinmiller v. State, 93 Fla. 462, 111 South. Rep. 633, in an opinion by Mr. Justice BUFORD in which all the members of the Court concurred. Both cases were again referred to and approved by this Court in Pompano Horse Club v. State, 93 Fla. 415, 111 South. Rep. 801, as to the definition of the terms mentioned.

The warrant in this case does not charge the petitioner with gambling nor maintaining a place or machine for the purpose of gaming or gambling. Indeed if such had been its purpose it fails to definitely allege the existence of the essential element that the petitioner won or lost something of value in the play as the other party to the transaction. The warrant was intended to charge the petitioner not with gaming or gambling or maintaining a place or machine for such purpose in violation of the provisions of Section 7657 C. G. L., *supra,* but with the offense of setting up and conducting a lottery by means of the machine described.

The contention in behalf of the respondent Sheriff is that such a machine is a lottery when operated in the manner described in the warrant and the setting up and conducting of such a mechanical device violates the provisions of Sec. 7667, C. G. L. 1927.

It may be true that every lottery is a game or gambling device but it does not follow that every game or gambling device is a lottery within the meaning of Section 23, Art. III, of the Constitution of 1885.

In the case of State v. Vasquez, 49 Fla. 126, 38 South. Rep. 830, this Court, speaking through Mr. Justice COCK-RELL, said that a machine into which a person put a check

costing five cents, giving to such person a "chance" or getting, in addition to a cigar and a tune from a musical instrument, "two or more—up to forty—additional checks, that were good for five cents each in trade at the place in which the machine was placed, and also stood a chance of getting no additional checks, but only the cigar and the music," can by no possible construction "be considered an *ejusdem generis* with lung testers, striking machines, weighing machines, chewing gum stands, or automatic penny-in-the-slot machines."

Vasquez was charged wih keeping a *gaming* apparatus. On writ of habeas corpus from the Circuit Court he was discharged from custody. This Court reversed the judgment of the Circuit Court.

In that case the Court held that Chapter 5106, Acts 1903, purporting to license the keeping of lung testers, striking machines and automatic penny-in-the-slot machines could not be construed into a license to keep a machine such as is described in the opinion. The learned Justice said: "Especially is such a construction untenable in this State, whose Constitution expressly provides (Section 23, Art. 3), 'Lotteries are hereby prohibited in this State.'"

Now the machine described in the warrant is in no material or essential feature different from the one described in the Vasquez case. Indeed the machine described in the warrant in this case does not possess the feature of returning to the player in every case a thing of value. In the Vasquez case the machine returned something of value on every play.

In the Vasquez case, *supra,* the Court held that the construction of the Act under consideration should not be so broad as to include slot machines of the type described in that opinion. In other words, that the Act did not re-

peal by implication an Act theretofore criminal and most generally condemned by the States of the Union in view of the constitutional clause above quoted prohibiting lotteries.

No statute in this State defines the term "Lottery."

In the case of J. M. Lee, as Comptroller, *et al.*, v. City of Miami, *et al.*, decided at this term, judgment rendered September 25, 1935, the Court had under consideration Chapter 17257, Laws of Florida, 1935, Section 1 of which provides for obtaining a license for setting up or operating "coin-operated" devices. Section 2 defines coin-operated devices as: "Automatic coin-operating vending and amusement machines with premium features, which may or may not vend for each coin deposited a standard article of merchandise having a recognized retail value, and which at intervals vend checks, tokens, coins or orders which may or may not be exchanged for additional merchandise."

In an opinion by Mr. Justice TERRELL, concurred in by three Justices of the Court, Mr. Justice BUFORD dissenting, the Court merely held that a coin-operated device such as that described in paragraph (1) of Section 2 was not a lottery *per se* within the meaning of Section 23, Article III, of the Constitution. The Court said: "It may be that some of them or possibly all of them in their operation will become" lotteries "but we leave that question to be determined when a specific case arises."

The Act defined "Automatic coin-operating vending and amusement machines with premium features, which may or may not vend for each coin deposited a standard article of merchandise having a recognized retail value." Such a machine may vend for each coin deposited a standard article of merchandise having a retail value, and at intervals may vend checks or coins which may or may not be exchanged for additional articles of merchandise.

The machine described in the warrant in this case does not purport to vend at any time or under any conditions any article of merchandise of any value, but does possess the feature of vending coins of the money of the United States varying in quantity only when the figures, numbers or designs on the revolving wheels appear in a certain order when the wheels, which are put in motion by the pulling of a lever by the operator, stop revolving. When the figures or designs on the wheels do not stop in a certain order nothing is vended by the machine.

Such a machine is not in any sense an "automatic coin-operating vending and amusement machine," which may vend an article of merchandise. It is a machine which when operated will not vend merchandise but will with automatic or mechanical precision, at certain periods in its operation, return to the player more than the one coin deposited by him in one play or operation. The return which it makes to the operator depends upon the mechanical adjustments which were previously made of the springs and controlling devices within the instrument when set up or put in place.

The result of any play or operation does not depend upon the operator's desire or skill. To him the result is a mere chance. He gambles that the internal mechanism of the machine at the time he plays is in such an alignment that it will release to him more than one coin of the denomination of that deposited by him.

The machine described in Vasquez case, *supra,* would without doubt be classed as of the type of machines described by Chapter 17257, *supra,* and as there is no essential difference between the machine described in the Vasquez case and the one described in the warrant in this case it

follows that the machine described in this case is within the class of machines described in the Act 17257, *supra*.

The machine described in the Act may vend merchandise and coins. The machine described in the warrant may vend coins only. The inducement to play or gamble would seem to be stronger with the merchandise and coin-vending chance than with the coin-vending chance only. That difference, in any case, would not seem to justify the conclusion that the machine described in the warrant does not come within the description of the type of machine referred to in the Act of the Legislature.

In the case of Lee, as Comptroller, *et al.*, v. City of Miami, *et al.*, *supra*, the Court held that a slot machine of the type described in the Act was not a lottery device within the meaning of the Constitution, Art. III, Sec. 23, prohibiting lotteries in this State.

In the able briefs submitted in this case in behalf of respondent we discover no argument which induces this Court to recede from the view expressed in the Lee, as Comptroller, case, *supra*. In that case the Court places its interpretation upon the word "Lotteries," as used in the Constitution, and limits the meaning of the word as there used to such gambling devices or methods which because of their wide or extensive operation a whole community or country comes within its contaminating influence; a scheme having the elements of advertising or sale to any individual of tickets and public distribution and division of prizes according to the numbers upon a ticket previously sold which entitled the owner to participate in a drawing or distribution of prizes to be made at a date in the future.

That there is a distinction between certain types of gambling and lotteries, as the term was used in the Constitution of 1868 and 1885, the opinion of the Court makes clear,

and that the Constitution lays no inhibition upon the legislative power to legalize a certain type of gambling such as that carried on with the type of slot machines described in the warrant.

Our conclusion, therefore, is that under the authority of the case of J. M. Lee, as Comptroller, *et al.,* v. City of Miami, *et al., supra,* the warrant in this case describes no offense under the laws of Florida, as the facts alleged in the warrant as to the character of mechanical device alleged to be set up, do not constitute the setting up and conducting of a lottery within the meaning of Section 7667, C. G. L., *supra.*

The petitioner is discharged.

WHITFIELD, C. J., and TERRELL, and BROWN, J. J., concur.

BUFORD, J., concurs specially.

DAVIS, J., not participating.

BUFORD, J. (concurring specially).—In the case of Lee, Comptroller, *et al.,* v. City of Miami, *et al.,* decided at this term, opinion filed September 25, 1935, I prepared and had filed a dissenting opinion in which I expressed my views as to what the construction of paragraph 1 of Section 2 of Chapter 17257, Acts of 1935, shoud be. In the majority opinion in that case a different construction was adhered to. The construction as promulgated in the majority opinion in that case became the law of the State of Florida in that regard when that opinion was filed and the mandate issued. Therefore, I am bound by the construction, as I am bound by any other law obtaining in the State of Florida.

On authority of the opinion and judgment in that case, the operation of a slot machine such as is described in the affidavit in this case could not constitute a lottery and, there-

fore, I concur in the judgment that the petitioner should be discharged.